## BOWLBY v. KLINE ET AL.

[No. 3,789. Filed April 11, 1902.]

BUILDING AND LOAN ASSOCIATIONS.—*Mortgages.*—*Assignment.*—*Negotiability.*—Building and loan association notes and mortgages were negotiable and transferable under §7515 Burns 1901, prior to the passage of the act of 1897, §4463e Burns 1901. *p. 660.*

SAME.—*Assignment of Mortgages.*—*Constitutional Law.*—*Impairment of Contracts.*—The provision of §4463e Burns 1901, providing that the bonds, notes or mortgages belonging to building and loan associations shall not be negotiable except upon an order of the circuit court or the judge thereof in vacation is not unconstitutional as impairing the obligation of contracts. Comstock, C. J., dissents. *pp. 659–664.*

From Shelby Circuit Court; *F. E. Gavin*, Special Judge.

Action by Andrew C. Bowlby against Mary E. Kline and others to foreclose a mortgage assigned to him by a building and loan association. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*T. B. Adams, Isaac Carter, A. E. Lisher* and *Joseph Chez*, for appellant.

*L. F. Wilson, A. F. Wray* and *T. H. Campbell*, for appellees.

ROBY, J.—The legislature by an act which became effective July 1, 1897, provided, among other things, that "The bonds, notes or mortgages belonging to any association shall not be negotiable except upon an order of the circuit court or the judge thereof, in vacation, of the county in which the principal office of said association is situated." §4463e Burns 1901.

The first paragraph of complaint is founded upon a note and mortgage executed October 16, 1894, by John Kline, to the Mutual Loan & Savings Company of Shelbyville, Ind., in the form usual to building and loan contracts. An assignment thereof was made by the payee to appellant on December 8, 1898. The appellant held second mortgages covering the same land described in the first paragraph, and

Bowlby *v.* Kline.

set them up in subsequent paragraphs of the complaint. Kline paid all amounts due under the contract up to March 6, 1897, and departed this life, April 22, 1897, leaving an estate of less than $500, which was set over to his widow under the statute. No payments were made after March 6th aforesaid. The payee of the note was a building and loan association, organized under the laws of the State of Indiana. The assignment was made without any order by any court or judge, as provided by the act of the legislature above set out.

The first conclusion of law was to the effect that the transfer by the payee was in violation of law, and that appellant was not entitled to recover on his first paragraph of complaint.

The correctness of the conclusion depends: (1) Upon whether the act of 1897, applies to instruments executed prior to its enactment; (2) whether if so applied it impairs the obligation of such contracts; (3) whether a building and loan association prior to its enactment had or had not power to negotiate its securities.

The powers of building and loan associations conferred by the act of 1885 included those of suing and being sued, of holding and conveying real estate and personal property, of loaning money and securing its repayment by note or mortgage and otherwise; of purchasing at sheriff's or public sale real estate upon which it had an encumbrance, or in which it had an interest; of conveying, leasing or mortgaging such real estate; of purchasing real estate and conveying it in fee simple, not in excess of fifty acres at one time. Acts 1885, p. 81, §§2, 3, 10, and 11, §§4445, 4446, 4453, 4454 Burns 1901. The right of a stockholder to withdraw and receive the amount paid in by him was also fixed by statute. Acts 1885, p. 81, §4447 Burns 1901. There was no legislation forbidding or restricting the transfer of bonds, notes, or mortgages held by such an association, prior to the act of 1897.

The general rule applicable to the assignment of securities by corporations is accurately stated in a recent textbook as follows: "A corporation which has received bills, notes, bonds, or other choses in action in the course of its business has the same power as a natural person to negotiate or assign the same, provided it does so for a legitimate corporate purpose, and violates no express restrictions in its charter." 1 Clark & Marshall Pri. Corp. §158. The rule applies to building and loan associations. *Davis* v. *Saratoga, etc., Union,* 32 Md. 285; *Grommes* v. *Sullivan,* 26 C. C. A. 320, 81 Fed. 45, 43 L. R. A. 419; and note; *North Hudson, etc., Assn.* v. *First Nat. Bank,* 79 Wis. 31, 47 N. W. 300, 11 L. R. A. 845, and note; *Quein* v. *Smith,* 108 Pa. St. 325, 331; *Wright* v. *Hughes,* 119 Ind. 324, 12 Am. St. 412.

All written promises to pay money are negotiable by indorsement so as to vest the property thereof in the assignee, who may recover on such instrument in his own name. §§7515, 7516 Burns 1901. And the right to take a note ordinarily implies a power to assign it. *Hardy* v. *Merriweather,* 14 Ind. 203.

That in the legitimate conduct of its business it may become desirable and necessary for a building and loan association to negotiate and assign paper held by it, is illustrated by the facts of this case. Holding a first mortgage upon real estate, the owner of which dies insolvent, the holder of a junior lien proposes to buy its claim, thereby reaching the same result that would follow from a foreclosure sale, purchase, and redemption. No reason can be suggested why it should not have power to save itself from the annoyance and risk of litigation and collect its money by selling and assigning its note and mortgage to him. The legislature by the negative and restrictive language used in the act of 1897, recognized the prior existence of the right. *Planters Bank* v. *Sharp,* 6 How. 301, 12 L. Ed. 447.

It follows that when the note and mortgage were executed by Kline, they carried with them the promise of the maker to pay to the assignee, if they should thereafter be properly assigned by the payee. The law is a part of every contract. *Pennsylvania Co.* v. *Clark,* 2 Ind. App. 152.

The law as it existed at the time of the execution, and not the law as it was when the assignment was made, determines the right to make it. *Planters Bank* v. *Sharp, supra.* Had the legislature thereafter attempted to destroy the negotiability of the contract its act would have been void. Constitution U. S. Art. 1 §10; Constitution Art. 1 §24; *Planters Bank* v. *Sharp, supra.* Nor in order to produce such result was it necessary that the act be prohibitive. "One of the tests, that a contract has been impaired, is that its value has by legislation been diminished. It is not by the constitution to be impaired at all. This is not a question of degree or manner or cause but of encroachment in any respect upon its obligation, dispensing with any part of its force." *Planters Bank* v. *Sharp, supra; Johnson* v. *Board,* etc., 140 Ind. 152; *McClelland* v. *State,* 138 Ind. 321; *Edwards* v. *Kearzey,* 96 U. S. 595, 24 L. Ed. 793; *Walker* v. *Whitehead,* 16 Wall. 314, 21 L. Ed. 357; *State ex rel.* v. *Helms,* 136 Ind. 122; *Security,* etc., *Assn.,* v. *Elbert,* 153 Ind. 198.

The effect of the act is to render an assignment made without the order therein required non-effective and void. *Dudley* v. *Congregation, etc.,* 138 N. Y. 451, 34 N. E. 281; *Atlantic Trust Co.* v. *The Vigilancia,* 73 Fed. 452-457; 1 Clark & Marshall Pri. Corp., §159.

To make the right of assignment to depend upon the consent of a third person which may or may not be given, is to introduce a new and burdensome provision into the contract. *Atlantic Trust Co.* v. *The Vigilancia,* 73 Fed. 452; *Atlantic Trust Co.* v. *The Vigilancia,* 68 Fed. 781.

In the case cited the consent required was that of the holders of two-thirds of the stock of the corporation. It

was held that a contract made prior to the act, and calling for the execution of a mortgage subsequent thereto, would be impaired thereby, and the act was construed to have only a prospective operation.

The consent of the stockholders required by the New York act considered in The Vigilancia cases might or might not be given; it was a matter of choice upon their part. The act of 1897, under consideration, is entirely different. The making of the order by the circuit court or the judge thereof is a judicial act (*City of Zanesville* v. *Zanesville, etc., Co.,* 64 Ohio St. 67, 59 N. E. 781, 786, 52 L. R. A. 150); an act to be performed when facts are exhibited and established, in some method known to the law upon which the order should be and therefore presumably is always made.

When the instruments were executed they were negotiable and assignable when it became necessary or expedient in the legitimate transaction of the business for doing which the association had been chartered to assign them. When no such necessity or expediency existed, the officers of the association had no power to negotiate or transfer them. The right and the power so to negotiate remains exactly as it was before, unimpaired and undiminished. It is a matter of common knowledge that the operations of building and loan associations extend over large areas; that their membership consists largely of persons of moderate means without opportunity to know or control the actions of the officers and managers; that great injustice had been done them at times, and that constant opportunity for frauds against them existed.

The legislature, recognizing the conditions, enacted the law in question for the purpose of safe-guarding the public from imposition and loss. That the legislature has the power to make police regulations for the protection of its citizens against fraud and imposition is established. *Brechbill* v. *Randall,* 102 Ind. 528, 52 Am. Rep. 695; *New* v. *Walker,* 108 Ind. 365, 58 Am. Rep. 40; *Hankey* v. *Downey,* 116

Ind. 118, 1 L. R. A. 447; *Hockett* v. *State,* 105 Ind. 250, 55 Am. Rep. 201.

Corporations are impliedly subject to such reasonable regulations in respect to the general conduct of their affairs as the legislature may from time to time prescribe, which do not interfere with the substantial enjoyment of privileges conferred and serve only to secure the ends for which the corporation was created. *Chicago Ins. Co.* v. *Needles,* 113 U. S. 574, 5 Sup. Ct. 681, 28 L. Ed. 1084; *Eagle Ins. Co.* v. *State of Ohio,* 153 U. S. 446, 14 Sup. Ct. 868, 38 L. Ed. 778; *Union Pac. R. Co.* v. *United States,* 99 U. S. 700, 25 L. Ed. 496; (Applied to building and loan associations), *State ex rel.* v. *American, etc., Assn.,* 64 Minn. 349, 358, 67 N. W. 1.

It does not, therefore, appear that the act of 1897 impairs the validity of either the contract between the association and the borrower or the contract between it and the State.

This cause was appealed to the Supreme Court, and transferred by that court to this one. Such order conclusively declares jurisdiction to be in this court. The questions presented and necessary to its decision have been examined and no error appears.

The judgment is therefore affirmed.

Black, Robinson, Wiley, Henley, JJ., concur.

Comstock, C. J., dissents.


## DISSENTING OPINION.

COMSTOCK, C. J.—The majority opinion concedes that the legislature, by the language of §4463e Burns 1901, recognized the right of a building and loan association in the legitimate conduct of its business to negotiate and assign its paper. Such right is an important element in a contract. The opinion concedes, also, that when the note and mortgage in suit were executed they carried with them the promise of the maker to pay to the as-

signee, if properly assigned by the payee; and that the law as it existed at the time of the execution of the note and mortgage, and not the law as it was when the assignment was made, determines the right to make the assignment. It is, and must, too, be conceded that a contract is impaired by an act of the legislature when such act diminishes its value.

The act of 1897 (§4463e Burns 1901) requiring an order of the circuit court or judge thereof, which order, if made at all, would only presumably be made upon written application and formal proceedings before the court at greater or less expense, for authority to transfer the bonds or notes of the association, when prior to its enactment such association might, without the authority of the court first obtained, make such transfer, adds, in the opinion of the writer, a burdensome provision to the contract and impairs its value. The judgment should be reversed.